UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER L. CIANCHETTA, and RUBINA T. CIANCHETTA,<br><br>Plaintiffs,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC; and NIELLO BAVARIAN AUTOMOBILES, INC.,<br><br>Defendants. | No.  2:20-cv-00241-KJM-EFB<br><br><br>ORDER |

Defendant BMW of North America, LLC ("BMW NA") moves to stay this action and compel arbitration.  Mot., ECF No. 8.  Plaintiffs Peter Cianchetta and Rubina Cianchetta oppose.  Opp'n, ECF No. 10.  BMW NA replied.  Reply, ECF No. 11.

The court heard oral argument on the motion on August 14, 2020 by video teleconferencing.  Rene Dupart appeared for plaintiffs; Mark Allen appeared for defendants. Having considered the argument at hearing, the moving papers, and the applicable law, the court DENIES the motion.

I.       BACKGROUND

This case arises from plaintiffs' purchase of a new 2015 BMW X5 35I ("the car" or "the vehicle") on October 18, 2014 from defendant Niello Bavarian Automobiles, Inc.

1

1   ("Niello").  Compl., ECF No. 1–1, ¶ 17.  BMW NA provided a four year, 50,000 mile warranty

2   on the vehicle.  *Id.* ¶ 18.  Plaintiffs allege the car had extensive and ongoing mechanical problems

3   necessitating repeated attempts at repair.  *Id.* ¶ 21.

4           On August 21, 2019, plaintiffs filed suit in Sacramento County Superior Court

5   against BMW NA and Niello for violations of the Song-Beverly Consumer Warranty Act,

6   California Civil Code section 1790 *et seq.*, and the California Unfair Competition Law, California

7   Business & Professions Code section 17200 *et seq.*  *Id.*  On January 7, 2020, plaintiffs voluntarily

8   dismissed Niello, a California-based defendant.  Not. Removal ¶ 15, ECF No. 1.  With Niello

9   dismissed and complete diversity between the parties, BMW NA removed the action to this court.

10  *See generally id.*

11          In purchasing the car, plaintiffs executed a purchase agreement with Niello

12  containing an arbitration clause.  Janet Welling Decl. Ex. A ("Purchase Agreement"), ECF No.

13  8–1.  Plaintiffs and Niello were the signatories to the purchase agreement.  *Id.* at 6.[1]  Niello

14  assigned its interest in the purchase agreement to BMW Finance of America.  *Id.* at 9.  BMW NA

15  has advanced no evidence it is an assignee and did not so contend at hearing.  The arbitration

16  clause at issue reads:

17

18      **1.  EITHER YOU OR WE MAY CHOOSE TO HAVE ANY
            DISPUTE BETWEEN US DECIDED BY ARBITRATION
            AND NOT IN A COURT OR BY JURY TRIAL […]**

19

20      Any claim or dispute, whether in contract, tort, statute or otherwise
        (including the interpretation and scope of this Arbitration Provision,

21      and the arbitrability of the claim or dispute), between you and us or
        our employees, agents, successors or assigns, which arises out of or

22      relates to your credit application, purchase or condition of this
        vehicle, this contract or any resulting transaction or relationship

23      (including any such relationship with third parties who do not sign
        this contract) shall, at your or our election, be resolved by neutral,

24      binding arbitration and not by a court action.

25  *Id.* at 8–9.

26

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [1] References to this document use the pagination assigned by the court's electronic docketing

28  system. The Purchase Agreement originally appeared on a single page but as filed was enlarged
    and spread across several pages for better legibility.

1        II.      LEGAL STANDARD

2                 Under 9 U.S.C. § 3, the court must stay an action on application of a party "upon

3        being satisfied that the issue involved in such suit or proceeding is referable to arbitration under"

4        a written agreement to arbitrate between the parties.  9 U.S.C. § 3.  A party "aggrieved by the

5        alleged failure, neglect, or refusal of another to arbitrate under a written agreement for

6        arbitration" may petition for an order compelling arbitration.  9 U.S.C. § 4.  If the district court is

7        satisfied the issue is referable to arbitration under a written arbitration agreement, it must compel

8        it.  *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985) (holding "shall" in statute

9        makes arbitration mandatory on satisfaction of court).  To determine the dispute is referable to

10       arbitration under the parties' agreement, the court must determine "(1) whether a valid agreement

11       to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."

12       *Kilgore v. KeyBank Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (quoting *Chiron Corp. v.*

13       *Ortho Diagnostic Sys. Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

14                The FAA makes agreements to arbitrate valid and enforceable, "save upon such

15       grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 3.  This

16       savings clause was intended to preserve generally applicable state law contract defenses such as

17       unconscionability.  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  State law

18       doctrines may not be applied in a way that disfavors or discriminates against arbitration

19       provisions.  *Id.* at 341.  The FAA evinces a "liberal federal policy favoring arbitration."  *Id.* at

20       339.

21                Because of the federal policy in favor of arbitration, there is a presumption of

22       arbitrability; "[a]n order to arbitrate the particular grievance should not be denied unless it may be

23       said with positive assurance that the arbitration is not susceptible of an interpretation that covers

24       the asserted dispute.  Doubts should be resolved in favor of coverage."  *AT&T Technologies, Inc.*

25       *v. Comms. Workers of America*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of*

26       *America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960)).

27       /////

28       /////

3

III.    DISCUSSION

The parties do not dispute that the Purchase Agreement here contains an arbitration clause.  Nor do plaintiffs argue the clause is invalid.  Rather, they dispute whether BMW NA may invoke the clause as a non-signatory to the agreement, and whether it encompasses the dispute at issue.  The Supreme Court has held the question of whether non-signatories to an arbitration agreement can invoke the agreement under the FAA is governed by the relevant state contract law.  *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009).  The court analyzes the question under California law; the parties agree California contract law applies.

a.   Arbitrability

As a threshold matter, BMW NA asserts the question of arbitrability is for the arbitrator under the arbitration clause.

Under the FAA, parties may agree that the threshold question of whether a given dispute is arbitrable under a written arbitration clause will be resolved by an arbitrator, and not a court.  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019).  The question of whether the parties agreed to have an arbitrator decide whether a dispute is arbitrable is one of contract.  *Id.* (citations omitted).  As a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," including the threshold question of arbitrability.  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (quoting *Warrior & Gulf*, 363 U.S. at 582).  Courts should not assume the parties agreed to arbitrate arbitrability absent "clear and unmistakable evidence that they did so."  *Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).).  In determining whether there was an agreement to arbitrate arbitrability, "as with any other contract, the parties' intentions control."  *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626 (1985))

Here, the arbitration clause contains a clear sign of the signatories' intent to arbitrate the threshold question of arbitrability as to some category of dispute:  the clause covers "the arbitrability of the claim or dispute[.]"  Purchase Agreement at 8–9.  However, it is not as obvious plaintiffs agreed to arbitrate arbitrability with BMW NA.  This question is inextricably

4

1   bound up with whether BMW NA can invoke the clause at all as a non-signatory.  Thus, the court

2   must determine whether BMW NA can invoke the arbitration clause at all; if it can, arbitrability is

3   for the arbitrator.  If not, the arbitration clause does not apply to either the substance of the

4   dispute or the threshold arbitrability question.

5                                 b.   Third Party Beneficiary

6          A non-signatory may enforce an arbitration agreement as a third-party beneficiary

7   of the agreement if the third party can "show that the contract reflects the express or implied

8   intention of the parties to the contract to benefit the third party."  *Comer v. Micor, Inc.*, 436 F.3d

9   1098, 1102 (9th Cir. 2006) (quoting *Klamath Water Users Protective Ass'n v. Patterson*,

10  204 F.3d 1206, 1211 (9th Cir. 2000)).  "Whether a party is an intended beneficiary or merely an

11  incidental beneficiary involves construction of the intention of the parties, gathered from reading

12  the contract as a whole in light of the circumstances under which it was entered."  *Cione v.*

13  *Foresters Equity Servs., Inc.*, 58 Cal. App. 4th 625, 636 (1997).

14         Here, the clause provides an agreement to arbitrate between "you and us or our

15  employees, agents, successors or assigns[.]"  Purchase Agreement at 8.  The covered claims are

16  those which "arise out of . . . any resulting transaction or relationship (including any such

17  relationship with third parties who do not sign this contract)[.]"  *Id.*  It is notable that the contract

18  enumerates a list of persons able to invoke the clause but omits from that list the third parties

19  from whom otherwise arbitrable claims might arise.  Under the rule of construction *expressio*

20  *unius est exlusio alterius* (literally, "the expression of one thing is the exclusion of another"),

21  mention of specific matters in a contract implies the intent to exclude related matters not listed.

22  *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1234 (9th Cir. 2013) (citing *Steven v. Fid. & Cas. Co. of*

23  *New York*, 58 Cal. 2d 862, 871 (1962)).[2]  Here, the list is clear as to the non-signatories who may

24  invoke the clause: employees, agents, successors or assigns.  It does not list other third parties

25  from whom claims might arise.

26  _____

27  [2] To the extent the court cites federal authority, it does so while recognizing principles of
    California contract law, which applies in diversity actions.  *Los Angeles Lakers, Inc. v. Fed. Ins.*
28  *Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (citation omitted).

To characterize BMW NA as a third-party beneficiary, the court would need to read the clause to mean that any third party from whom a dispute arises could compel arbitration. "A court must interpret a contract to give effect to all of its terms and avoid an interpretation that renders a term mere surplusage." *Advanced Network, Inc. v. Peerless Ins. Co.*, 190 Cal. App. 4th 1054, 1063–64 (2010).  The list of  "employees, agents, successors or assigns" who have a contractual right to compel arbitration would be meaningless if other unidentified third parties could also compel arbitration.  Under a proper reading of the clause, while claims arising from third-party relationships and transactions may be arbitrable under the clause, they would only be arbitrable by the enumerated parties.  There is no evidence of the parties' intent to allow non-signatories not falling into the enumerated categories to invoke the clause as third-party beneficiaries.  Because BMW NA has advanced no evidence it is one of the enumerated categories, it is not a third-party beneficiary to the contract.

c. Equitable Estoppel

BMW NA asserts equitable estoppel allows it to compel arbitration notwithstanding that is not a signatory to the agreement.  Equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Comer*, 436 F.3d at 1101 (citation and internal quotation marks omitted).  A non-signatory may compel a signatory to arbitrate a dispute under the principles of equitable estoppel.  *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045–46 (9th Cir. 2009).

> Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances; (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.

*Kramer v. Toyota Motor Corp.,* 705 F.3d 1122, 1128–29 (internal quotation marks omitted, citing *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 219, 221 (2009)).

////

6

1    In *Kramer*, the plaintiffs sought "revocation of acceptance" of their vehicle

2    purchase contract and relied on the price term of the contract to support their prayer for damages

3    in a similar warranty action against Toyota.  *Id.* at 1130.  The Ninth Circuit held this was not

4    sufficiently "intertwined with" or "intimately connected" with the underlying agreement to estop

5    the plaintiffs and allow Toyota to compel arbitration.  *Id.* at 1131.  It also held any alleged pattern

6    of concealment or warranty denial between the signatory dealerships and Toyota was not

7    "inextricably bound up with the obligations imposed by the agreement containing the arbitration

8    clause."  *Id.* at 1133 (quoting *Goldman*, 173 Cal. App. 4th at 219).

9    So it is here.  BMW NA argues that because the warranty arises from the sale

10   governed by the purchase agreement, it is intertwined with that agreement.  Mot. at 10–11.  BMW

11   NA also argues the express warranty and implied warranty of merchantability are terms of the

12   agreement, and thus the claims are "intimately founded in and intertwined with the instant

13   Purchase Agreement[.]"  Mot. at 10.

14   "A warranty is as much one of the elements of sale and as much a part of the

15   contract of sale as any other portion of the contract and is not a mere collateral undertaking . . .

16   [T]o constitute an express warranty, the statement must be part of the contract."  *A.A. Baxter*

17   *Corp. v. Colt Industries, Inc.*, 10 Cal. App. 3d 144, 153 (1970).  BMW NA argues, correctly, that

18   the Song-Beverly Act "supplements, rather than supersedes, the provisions of the California

19   Uniform Commercial Code."  Mot. at 11 (citing *Kreiger v. Nick Alexander Imports, Inc.*,

20   234 Cal. App. 3d 205, 213 (1991)).  The implied warranty of merchantability "accompanies every

21   retail sale of consumer goods in the state" under the Song-Beverly Act.  *Keegan v. Am. Honda*

22   *Motor Co., Inc.*, 838 F. Supp. 2d 929, 944 (C.D. Cal. 2012).  However, while the express and

23   implied warranty may be part of the purchase agreement under California law, simply being part

24   of the contract is not the test.  The purchase agreement must be more than a "but-for" cause of the

25   claims.  The verbiage of these cases requires greater entanglement between the claims at issue

26   and the contract containing the arbitration clause, as is clear from the phrasing "intimately

27   founded in" and "intertwined."  *Kramer*, 705 F. 3d at 1129 (citations omitted).  Here, plaintiffs'

28   claims against the non-signatory defendant do not "rely on the terms" of the agreement containing

the clause. *In re Henson*, 869 F. 3d 1052, 1060 (9th Cir. 2017) (citing *Kramer*, 705 F.3d at 1124–25) ("We expressly rejected Toyota's argument that the plaintiffs' claims were necessarily based on the Purchase Agreements merely because the lawsuit was predicated on the bare fact that a vehicle purchase occurred."). Estoppel arises only when a claim requires the court to analyze the obligations at issue in the purchase agreement, a task it need not perform here. The purchase agreement disclaims warranties provided by the seller, but states "[t]his provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide." Purchase Agreement at § 4.[3] The court need not interpret the purchase agreement to determine the obligations of BMW NA in a separate warranty.

Accordingly, the court heeds the Ninth Circuit's narrow interpretation of the principle of equitable estoppel in the context of non-signatories attempting to compel arbitration as described in *Mundi*, 555 F. 3d at 1046, and *Kramer*, 705 F.3d at 1129–30. BMW NA may not compel arbitration as a non-signatory on a theory of equitable estoppel.

## IV.   CONCLUSION

For the foregoing reasons, BMW North America, LLC's motion to compel arbitration and stay the proceedings is DENIED. This order resolves ECF No. 8. The court sets

/////

/////

/////

/////

---

[3] The clause reads in full:

> If you do not get a written warranty, and the Seller does not enter into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.
> This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. If the Seller has sold you a certified used vehicle, the warranty of merchantability is not disclaimed[.]

Purchase Agreement § 4.

an initial scheduling conference for October 22, 2020 at 2:30 PM by Zoom teleconferencing.  The parties shall file a joint status report no later than fourteen days before the scheduling conference.

IT IS SO ORDERED.

DATED:  September 17, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE